IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DWAYNE SHAW, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 25-CV-1745 |
| : | |
| CITY OF PHILADELPHIA, LAW : | |
| DEPARTMENT, *et al.*, : | |
|     Defendants. : | |

MEMORANDUM

**HODGE, J.**                                                                                       APRIL 11, 2025

Plaintiff Dwayne Shaw brings this civil action based on allegations that his rights were violated when his children were removed without his consent over two decades ago based on unfounded accusations of child abuse. For the following reasons, the Court will grant Shaw leave to proceed *in forma pauperis*, dismiss his Complaint, and deny his Motion to appoint counsel.

I.     FACTUAL ALLEGATIONS[1]

The events giving rise to Shaw's claims occurred "[i]n or about the summer of 1997." (Compl. at 3.) Around that time, Shaw reached an agreement with the mother of his children to assume custody of their children for a year during her incarceration. (*Id.*) Before the term of incarceration began, however, the Philadelphia Department of Human Services ("DHS") "falsely accused" Shaw of child abuse and "coerced" the mother of Shaw's children "into consenting to a safety plan under threat of permanently losing her children." (*Id.*) In accordance with that safety

---

[1] The following allegations are taken from the Complaint. (ECF No. 2.) The Court adopts the pagination supplied by the CM/ECF docketing system. Shaw also filed discovery materials with his Complaint, which were returned to him by the Clerk's Office. (*See* ECF No. 6.)

plan, DHS "seized" the children without Shaw's "knowledge or consent, probable cause, exigent circumstance, or a proper warrant, . . . subjecting Plaintiff Shaw and his children to an elaborate and unfettered campaign of Institutional Conspiracy and Systemic Retaliation." (*Id.*)  The children were then placed in emergency protective custody.  (*Id.*)

Thereafter, Shaw received a summons from the Philadelphia Family Court.  (*Id.* at 4.)  He responded to the summons with an intent to "exercis[e] parental rights and reunit[e] with the children."  (*Id.* (emphasis omitted).)  Although a hearing was scheduled, it was "abruptly cancelled and rescheduled."  (*Id.*)  Shaw then "penned a letter of protest" to DHS, claiming that it acted in an arbitrary and capricious manner and violated his parental rights.  (*Id.*)  During the rescheduled hearing, DHS falsely accused Shaw of child abuse to justify the children's removal, while failing to notify Shaw of "the material fact and exculpatory evidence of the child abuse investigation's outcome (i.e. that it was unsubstantiated)."[2]  (*Id.*)  Shaw further alleges that his court-appointed attorney failed to adequately represent him and that the presiding Judge, the Honorable Nicholas N. D'Allessondro, erred by prematurely terminating the hearing and permitting "DHS' malicious testimony of child abuse" into the court record.  (*Id.*)  The Complaint implies that, following the hearing, Judge D'Allessondro ruled in favor of DHS, justifying the children's placement in state custody for eight years.  (*Id.*)  According to Shaw, "DHS engaged in a pattern of unlawful removals, which led to a policy change in 2014 requiring due process hearings within 72 hours of implementing a safety plan affecting custody," (*id.* at 6

---

[2] Shaw also alleges that he has been fully "exonerated" because his Pennsylvania Child Abuse History Certification reflects that he has "never been listed as a perpetrator of child abuse in the statewide database." (Compl. at 9 (emphasis omitted).)  Shaw refers to the certification as Exhibit 1, but it appears he did not attach the document to his Complaint.  (*Id.*)

2

(emphasis omitted)), but this policy change "came too late" to prevent the harm suffered by him and his children, (*id.* at 12).

Based on these allegations, Shaw brings assorted claims under federal and state law against DHS, the City of Philadelphia Law Department, Judge D'Allessondro, and his court-appointed attorney (listed as a John Doe Defendant). (*See id.* at 6-12.) He seeks damages, a declaration that the Defendants violated his rights, and an injunction preventing DHS "from employing fraudulent safety plans."[3] (*Id.* at 13.)

## II.    STANDARD OF REVIEW

The Court will grant Shaw leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At the screening stage, the Court accepts the facts alleged in the *pro se* complaint as true, draws all reasonable inferences in the plaintiff's favor, and asks whether the complaint, "liberally construed, contains facts sufficient to state a plausible claim." *Shorter v.*

---

[3] Shaw lacks standing to seek prospective relief in the form of an injunction or declaration because his claims are based on past harm. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (standing to pursue injunctive relief depends on whether plaintiff is "likely to suffer future injury"); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) ("Allegations of possible future injury are not sufficient to satisfy Article III." (internal quotations omitted)); *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."). Accordingly, the Court will dismiss these claims without prejudice. The analysis below focuses on Shaw's claims for damages.

*United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

### III.   DISCUSSION

#### A.  Section 1983 Claims

Shaw brings at least six claims for violation of his constitutional rights pursuant to 42 U.S.C. § 1983 based on DHS's use of the safety plan to remove his children and the related court proceedings in which, among other things, DHS accused him of child abuse. (*See* Compl. at 6-8 (counts one through four and count six) & 10-12 (discussing allegations in support of alleged conspiracy and retaliation).) These claims are time-barred.

Pennsylvania's two-year statute of limitations applies to Shaw's § 1983 claims. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007). A claim accrues "when a plaintiff has a complete and present cause of action, that is, when [he] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotations omitted). In general, this means that the statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). This is consistent with Pennsylvania's "discovery rule," which delays the running of the statute of limitations where "despite the exercise of reasonable diligence," a plaintiff cannot know that he is injured and by what cause. *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). Additionally, federal law permits equitable tolling of § 1983 claims: "(1) where a defendant actively misleads a plaintiff with respect to her

4

cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum." *Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000).

It is apparent from the face of the Complaint, (*see* Compl. at 3-5), that Shaw knew in 1997 that his children were being removed from his care based on false allegations of child abuse because that is when he attended court proceedings and unsuccessfully challenged DHS's actions before Judge D'Allessondro. *See also Bennett v. Susquehanna Cnty. Child. & Youth Servs.*, 592 F. App'x 81, 83 (3d Cir. 2014) ("Bennett's cause of action for all claims accrued at the time of the alleged unlawful seizure and withholding of her two minor children on November 18, 2009" and could not be saved by equitable tolling or the continuing violations doctrine); *Daniels v. Harper*, No. 23-3867, 2024 WL 580874, at *4 (E.D. Pa. Feb. 13, 2024) ("Plaintiffs' § 1983 claims accrued on the dates that their children were removed . . . because it is apparent that on those dates Plaintiffs knew that their minor children were being removed from their care."); *Moore v. Morrison*, No. 21-4100, 2022 WL 824102, at *5 (E.D. Pa. Mar. 18, 2022) (dismissing § 1983 claims as time-barred where the "amended complaint makes clear on its face that the plaintiffs knew at the time in January 2017 that their children were initially removed from their care" and thus "their claims related to the removal of their children started accruing at that time"). In other words, the cause and nature of Shaw's alleged constitutional injuries either were apparent to him or should have been apparent to him with the exercise of reasonable diligence in 1997 when the removal proceedings took place.[4]  Since he did not file this lawsuit until

---

[4] Although Shaw alleges that he was not aware of his children's placement at the time DHS took them into custody, it is clear he became aware of DHS's action during the subsequent court

5

approximately twenty-five years after his claims accrued, it is apparent from the face of the Complaint that they are time-barred.[5]

### B. Other Federal Claims

Shaw also invokes other federal statues pursuant to which he purports to bring claims, *i.e.*, 18 U.S.C. § 1001, 42 U.S.C. § 675(5)(c), 34 U.S.C. § 12601.[6] (Compl. at 7-9.) Neither 18 U.S.C. § 1001 (criminalizing certain false statements), nor 34 U.S.C. § 12601 (providing a cause

---

proceedings. The untimely nature of Shaw's claims is further evinced by his allegations that DHS's policy change in 2014 came too late to subvert any harm done to him.

[5] Shaw's claims fail for other reasons too. First, he has not alleged sufficient facts to support a plausible conspiracy claim. *See Dennis v. Sparks*, 449 U.S. 24, 28 (1980) ("[B]eing on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge"); *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (*per curiam*) ("A conspiracy cannot be found from allegations of judicial error . . . or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions." (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990))). Second, Judge D'Allessondro is entitled to absolute judicial immunity from Shaw's § 1983 claims. *See Capogrosso*, 588 F.3d at 184 ("A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)). Third, Shaw's court-appointed attorney is not a state actor subject to liability under § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (holding that court-appointed attorneys are not state actors under § 1983 "when performing a lawyer's traditional functions as counsel" (footnote omitted)); *Heffley v. Steele*, 826 F. App'x 227, 231 (3d Cir. 2020) (*per curiam*) (concluding that "various lawyers named as defendants" were not state actors). Finally, individual departments of the City of Philadelphia, such as DHS and the Law Department, may not be sued separately from the City. *See Kent v. Philadelphia D.H.S.*, 503 F. App'x 128, 130 n.2 (3d Cir. 2012) (*per curiam*) ("We also agree with the District Court that Philadelphia D.H.S., separate from the City of Philadelphia, was not a proper defendant." (citing 53 Pa. Con. Stat. § 16257)); *Groce v. City of Phila. L. Dep't*, No. 21-5132, 2022 WL 493418, at *3 (E.D. Pa. Feb. 17, 2022) (dismissing claims against the Law Department because it does not "have a separate legal existence" from the City).

[6] To the extent Shaw occasionally cites other statutes, such passing references are not sufficient to raise plausible claims. *See Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 n.10 (E.D. Pa. Oct. 7, 2022) (noting that a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other." (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))).

of action for the attorney general to sue for unlawful patterns or practices in juvenile justice and incarceration), provide a basis for a private cause of action.[7] *See Federal Savings & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 137 (4th Cir. 1987) (holding that no private right of action exists under 18 U.S.C. § 1001); *Mathis v. Philadelphia Elec. Co.*, 644 F. App'x 113, 116 (3d Cir. 2016) (*per curiam*) (concluding that § 1001 does not create a private cause of action); *see also Steinhardt v. Bernardsville Police Dep't*, No. 20-2825, 2021 WL 3929321, at *2 n.2 (3d Cir. Sept. 2, 2021) (*per curiam*) ("Steinhardt also referenced 18 U.S.C. § 241 and 34 U.S.C. § 12601, but these provisions contain no private right of action.").

The remaining statute, 42 U.S.C. § 675(5)(c), is a provision of the Adoption Assistance and Child Welfare Act ("AACWA"). The AACWA "require[s] States receiving funds for adoption assistance to have a 'plan' to make 'reasonable efforts' to keep children out of foster homes." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 281 (2002). The United States Supreme Court has held that the provision of the AACWA requiring federally-funded states to make "reasonable efforts" to encourage family reunification does not give rise to a private cause of action. *Suter v. Artist M.*, 503 U.S. 347, 364 (1992) ("We conclude that 42 U.S.C. § 671(a)(15) neither confers an enforceable private right on its beneficiaries nor creates an implied cause of action on their behalf."). In that regard, the Court observed that "[t]he term 'reasonable efforts' in this context is at least as plausibly read to impose only a rather generalized duty on the State, to be enforced not by private individuals, but by the Secretary [of Health and Human Services]." *Id.* at 363.

The provision cited by Shaw, § 675(5)(c), is in the definitional section of the statute, and defines "case review plan" to include certain procedural protections for children in foster care as

---

[7] Indeed, criminal statutes rarely give rise to private causes of action for damages. *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994).

well as "procedural safeguards" for "parental rights pertaining to the removal of the child from the home of his parents, to a change in the child's placement, and to any determination affecting visitation privileges of parents." Courts have disagreed on whether the definitions of "case plan" under the AACWA create privately enforceable rights under § 1983.[8] *See Henry A. v. Wilden*, 678 F.3d 991, 1006-09 (9th Cir. 2012) (noting split of authority); *Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 170 (D. Mass. 2011) ("Federal courts are divided as to whether the AACWA creates privately enforceable rights to . . . a case plan."). However, a plaintiff suing directly pursuant to a statutory provision "under an implied right of action [as opposed to under § 1983] still must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy.*'" *Gonzaga Univ.*, 536 U.S. at 284 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). "[T]he Adoption Act contains no mechanism by which aggrieved individuals can enforce its provisions. Instead, the Secretary enforces the Adoption Act by requiring the implementation of corrective action or withholding federal funds if the states fail to comply with an approved plan." *31 Foster Child. v. Bush*, 329 F.3d 1255, 1272 (11th Cir. 2003); *Sam M. ex rel. Elliott v. Chafee*, 800 F. Supp. 2d 363, 388 (D.R.I. 2011) ("[I]t is undisputed that the AACWA does not contain private enforcement remedies for a State's non-compliance with the provisions on which the plaintiffs rely in their action."). Accordingly, there is no implied right of action under § 675(5)(c). *See Crawford v. Washington Cnty. Child. & Youth Servs.*, No. 06-1698, 2008 WL 239454, at *6 n.1 (W.D. Pa. Jan. 29, 2008); *see also S.M. by next friend King v. City of N.Y.*, No. 20-5164, 2021 WL 3173456, at *5 (S.D.N.Y. July 26, 2021) ("To be sure, none of these sections [including § 675(5)(A)] explicitly provides a private right of action" but

---

[8] Assuming, without deciding, that § 675(5)(c) is enforceable through § 1983, such a claim would be time-barred with the rest of Shaw's § 1983 claims for the reasons stated above.

concluding that some of the provisions, including § 675(5)(A) were enforceable under § 1983). The Court will therefore dismiss Shaw's remaining federal claims.

### C. State Claims

All that remains is Shaw's defamation claim and, perhaps, any other claims he intended to pursue under state law. It would be inappropriate to exercise supplemental jurisdiction over any such claims, having dismissed all of Shaw's federal claims, so the only independent basis for federal jurisdiction over these state law claims is 28 U.S.C. § 1332(a). That provision grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Since the parties are all Pennsylvania citizens, (Compl. at 3), they are not diverse in citizenship, meaning the Court cannot exercise jurisdiction under § 1332.

## IV. CONCLUSION

In sum, the Court will grant Shaw leave to proceed *in forma pauperis*, dismiss his Complaint, and deny his Motion to Appoint Counsel due to the dismissal of this case. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (before exercising discretion to appoint counsel "the district court must consider as a threshold matter the merits of the plaintiff's claim"). Amendment would be futile here because Shaw cannot cure the legal defects in his claims. A final order follows, which dismisses this case in full. *See* Fed. R. Civ. P. 58(a).

**BY THE COURT:**

/s/ Hon. Kelley B. Hodge
_____
**KELLEY BRISBON HODGE, J.**